IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| v. ) | Criminal Action No. 1:15-cr-222-3 |
| ) | |
| JEFF MBUENCHU, ) | |
| ) | |
| *Defendant*. ) | |

## Memorandum Opinion

This matter comes before the Court on Defendant Jeff Mbuenchu's Rule 29(c) Motion for Acquittal. The Court held a hearing on this Motion on June 24, 2016. For the reasons outlined below, and as stated in Court, the Court ORDERS that the Motion is DENIED.

## I. Background

On November 23, 2015, after a five-day jury trial, Jeff Mbuenchu was convicted by a jury of his peers of three counts:[1]

- Count One: conspiracy to distribute controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 846; and

- Counts Six and Seven: using and carrying firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c).

In early December of 2015, Mbuenchu filed a *pro se* motion for judgment of acquittal. Dkt. No. 79. On March 1, 2016, Mbuenchu's trial counsel filed a motion to withdraw, Dkt. No. 121, which the Court granted, Dkt. No. 122. The Court then appointed Mbuenchu new counsel. Dkt. No. 123. The Court also granted Mbuenchu's new counsel leave to supplement Mbuenchu's *pro se* Motion for acquittal. Dkt. No. 150. After the new defense counsel filed a supplemental brief,

---

[1] A full statement of the facts supporting Mbuenchu's convictions is set forth in the government's brief in opposition to the Motion. Dkt. No. 154. The Court adopts this statement of facts as it finds it to be accurate.

1

the government filed a response in opposition to the Motion. Dkt. No. 154. Defense counsel then filed a reply brief, Dkt No. 156, and the Court heard oral argument on the Motion on June 24, 2016.

## II. Legal Standard

Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29") provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal" when the defendant successfully challenges the sufficiency of the evidence used to convict him. Fed. R. Crim. P. 29(c)(2). A defendant making a Rule 29 motion challenging the sufficiency of the evidence carries a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). The Fourth Circuit has dictated that, in analyzing a Rule 29 motion, a district court should inquire whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court should also give deference to the trier of fact. *Id.* This requires the court to "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *Id.*

## III. Analysis

### A. Whether the evidence is insufficient to sustain the verdict as to Count One: conspiracy to distribute a controlled substance

Mbuenchu first argues that he should be acquitted of Count One because he did not participate in a conspiracy to distribute controlled substances. The parties agree that "the government was required to establish beyond a reasonable doubt that: '(1) an agreement to distribute and 'possess [controlled substances] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and

2

voluntarily became a part of this conspiracy.'" *United States v. Yearwood*, 518 F.3d 220, 225-26 (4th Cir. 2008) (quoting *United States v. Burgos*, 94 F.3d 849, 857 (en banc) (4th Cir. 1996)). After all the evidence was presented at trial and the Court instructed the jury on the crime of conspiracy, the jury found Mbuenchu guilty of participating in a conspiracy to distribute marijuana, MDMA, BZP and Foxy Methoxy.

The United States Court of Appeals for the Fourth Circuit has recognized that "conspiracy is usually proven by circumstantial evidence" because conspiracy, by its nature, is "clandestine and covert." *Id.* (quoting *Burgos*, 94 F.3d at 857). "Circumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." *Id.* (quotations omitted). After reviewing the evidence presented at trial, the Court concludes that there was plainly sufficient evidence to prove that Mbuenchu entered into an agreement with Alvin Glasgow and Elijah J. Mayson to distribute controlled substances.

The government demonstrated, through the testimony of Detective Cupka and Elijah Mayson that Mbuenchu knew that Mayson was distributing controlled substances and assisted him in distributing controlled substances. The evidence shows Mbuenchu provided Mayson with ecstasy and marijuana to trade with the undercover officers and that Mbuenchu drove Mayson to different locations in order to conduct these trades. Specifically, on September 22, 2010, Mbuenchu drove Mayson to Gravelly Point in Arlington, Virginia, to engage in a trade with Detective Cupka. Mbuenchu gave Mayson 250 ecstasy tablets, which Mayson exchanged with Detective Cupka on that day for $1250 in cash and a box of cigarettes. Mbuenchu had obtained the ecstasy pills from an associate named Chang. During the actual exchange with Detective

Cupka, Mbuenchu remained in the car. Shortly thereafter, Mayson proposed to Mbuenchu and Glasgow that they continue to trade with the undercover officers and split the profits from the transactions three ways. Mbuenchu declined this deal and declined to participate directly in trades with the undercover officers, but continued to sell marijuana and ecstasy to Mayson that he knew Mayson would trade with the officers.

Mbuenchu also continued to drive Mayson, who did not have a driver's license, to the transactions with the officers. On February 22, 2011, Mbuenchu drove Mayson to a storage facility in Alexandria, Virginia, to engage in a trade with the undercover officers for untaxed cigarettes. Mayson introduced Mbuenchu to the officers and handed Detective Cupka a laptop bag containing 494 ecstasy tablets, marijuana, and a Walther 7.65 mm semiautomatic pistol. Cupka opened the bag in Mbuenchu's presence and the present parties discussed the items that were offered for trade.

On March 1, 2011, Mayson offered, and Mbuenchu accepted, $250 to drive Mayson first to his mother's house, where he stashed two guns, and then to meet with his probation officer. Later Mayson offered, and Mbuenchu accepted, $1,000 to drive Mayson, first, to Clarksburg to pick up two additional firearms, second, to his mother's house to pick up the two firearms he had stashed there, third, to College Park, Maryland, where they obtained ecstasy and marijuana from one of Mbuenchu's sources, and, finally, to Virginia, to trade with the undercover officers. Mbuenchu was present when Mayson handed over the guns and drugs to the undercover officers that day.

Mbuenchu was also present at an exchange with the undercover officers on March 10, 2011, at the Alexandria storage facility. Mbuenchu and Mayson brought 484 tablets of MDMA,

4

212.4 grams of marijuana, and counterfeit $100 bills, which they exchanged for untaxed cigarettes.

This evidence shows that Mbuenchu knew about, agreed to, and actively participated in a conspiracy with Mayson and Glasgow to distribute a host of controlled substances. Mbuenchu's conclusory argument that the evidence only shows that he was part of a conspiracy to sell guns for untaxed cigarettes is entirely meritless. First, there was convincing testimony that Mbuenchu supplied Mayson with ecstasy and marijuana to trade with the undercover officers on many occasions. Second, the remainder of the evidence against Mbuenchu also shows he generally knew about and participated in the conspiracy. In *United States v. Stevenson*, 439 F. App'x 268 (4th Cir.), on reh'g, 457 F. App'x 238 (4th Cir. 2011), the Fourth Circuit affirmed Stevenson's conviction of conspiracy to distribute narcotics under 21 U.S.C. § 846. The Fourth Circuit summed up the evidence against Stevenson as follows:

> Stevenson knew Beatty had a history of dealing drugs and had allowed him to store drugs on his property. On the day of the transaction, Stevenson provided Beatty with drug testing kits, drove him and Patterson to the location of the drug deal, kept his plans private from other individuals, discussed with the other two men that they needed to be on the same page if anything went wrong and agreed to accept payment of $1000 for driving.

*Id.* at 269. The Fourth Circuit concluded that "this evidence of Stevenson's conduct and attitude shows that he was in agreement with the other men to purchase narcotics for the purpose of distribution." *Id.* The facts of Mbuenchu's case are quite similar. Mbuenchu had a history with Mayson and Glasgow and he knew they were conspiring to, and were in fact, distributing controlled substances to the undercover officers. Mbuenchu continued to drive Mayson to meet the officers in exchange for cash, he knew the nature and purpose of the meetings, he supplied much of the drugs through his supplier contacts, and he kept his plans private from other individuals. While Mbuenchu initially declined to take a one-third cut of the profits from the

trades with the officers, he nevertheless continued to participate in and facilitate the conspiracy through his actions outlined above.

Accordingly, the Court finds the prosecution presented sufficient evidence to convict Mbuenchu on Count One. Mbuenchu's motion for acquittal on Count One is, therefore, DENIED.

### B. Whether the evidence is sufficient to sustain the verdict as to Counts Six and Seven: using and carrying firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)

Mbuenchu next argues that he should be acquitted on Counts Six and Seven, which both charge him with a violation of 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1) criminalizes "us[ing] or carr[ying] a firearm" during any violent or drug trafficking crime. *United States v. Camps*, 32 F.3d 102, 107 (4th Cir. 1994). A conviction under § 924(c) requires the government to prove that "(1) the defendant used or carried a firearm, and (2) the defendant did so during and in relation to a drug trafficking offense or crime of violence," *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997), or that (1) the defendant possessed a firearm (2) in furtherance of a drug trafficking crime. *United States v. Perry*, 560 F.3d 246, 254 (4th Cir. 2009); 18 U.S.C. § 924(c).

A conspiracy to commit a violent crime or a drug trafficking crime can be the predicate offense for a § 924(c) conviction. *United States v. Blackman*, 746 F.3d 137, 141-42 (4th Cir. 2014) (citing *United States v. Ashley*, 606 F.3d 135, 142–43 (4th Cir. 2010)). Under the *Pinkerton* doctrine, a defendant can be convicted of a violation of § 924(c) if the defendant joined a predicate conspiracy and "the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy." *Id.* As explained in the previous section, Mbuenchu was properly convicted of a conspiracy to distribute controlled substances—a drug

6

trafficking crime. Thus, Mbuenchu can be properly convicted of a violation of § 924(c) if the evidence shows that Mbuenchu or one of his co-conspirators used or carried a gun in furtherance of the conspiracy and that use was reasonably foreseeable to Mbuenchu. *Id.* (finding that defendant was properly convicted of a § 924(c) violation, under the *Pinkerton* doctrine, even though the defendant himself did not use or carry a firearm in relation to the conspiracy nor was he present when his co-conspirators brandished a firearm in furtherance of the conspiracy).

The Supreme Court has explained that "use" of a firearm means "active-employment." *Bailey v. United States*, 516 U.S. 137, 148, 116 S. Ct. 501, 508, 133 L. Ed. 2d 472 (1995). This definition "includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm. . . . [E]ven an offender's reference to a firearm in his possession could satisfy § 924(c)(1)." *Id.* Thus, the use of a firearm in this context is much broader than discharging the firearm or brandishing it as a threat. The Supreme Court has also broadly construed the "in relation to" requirement. *Smith v. United States*, 508 U.S. 223, 237, 113 S. Ct. 2050, 2058, 124 L. Ed. 2d 138 (1993). At a minimum, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* This requirement can be met by showing that the firearm facilitated or had the potential of facilitating the drug trafficking crime. *Id.*

Count Six charges that Mayson and Mbuenchu used and carried a firearm during and in relation to a drug trafficking crime on February 22, 2011. As stated above, the evidence at trial showed that on February 22, 2011, Mbuenchu drove Mayson to a storage facility in Alexandria, Virginia, to engage in a trade with the undercover officers for untaxed cigarettes. Mayson introduced Mbuenchu to the officers and handed Detective Cupka a laptop bag containing 494

ecstasy tablets, marijuana, and a Walther 7.65 mm semiautomatic pistol. Cupka opened the bag in Mbuenchu's presence and the present parties discussed the items that were offered for trade.

Count Seven charges that Mayson and Mbuenchu used and carried a firearm during and in relation to a drug trafficking crime on March 1, 2011. The evidence at trial showed that on March 1, 2011, Mayson offered, and Mbuenchu accepted, $250 to drive Mayson first to his mother's house, where he stashed two guns, and then to meet with his probation officer. Later Mayson offered, and Mbuenchu accepted, $1,000 to drive Mayson, first, to Clarksburg to pick up two additional firearms, second, to his mother's house to pick up the two firearms he had stashed there, third, to College Park, Maryland, where they obtained ecstasy and marijuana from one of Mbuenchu's sources, and, finally, to Virginia, to trade with the undercover officers. Mbuenchu was present when Mayson handed over the guns and drugs to the undercover officers that day.

Mbuenchu argues that the use or carry requirement has not been met because the presence of firearms did not actively facilitate the drug transactions as required by the statute. The facts in *United States v. Lipford*, 203 F.3d 259, 264 (4th Cir. 2000), are very close to this case. In *Lipford*, a government informant sought to purchase both a firearm and drugs from the defendant in exchange for cash. *Id.* After several transactions in which the informant and defendant exchanged only drugs, the two met and completed the exchange of both crack and a .25 caliber pistol. *Id.* At this transaction, the defendant "first handed [the informant] the handgun, then gave him thirteen and one-half grams of crack." *Id.* The informant "passed Lipford $750, then paid Lipford the remaining $40, the balance due for the firearm." *Id.* The *Lipford* court found the "gun's involvement in the drug transaction [was] not 'spontaneous' or 'co-incidental'"; rather, the firearm "sweetened the pot" and facilitated the drug transaction. *Id.* at 267.

Similarly in this case, the presence of firearms in the transactions was not "spontaneous" or "co-incidental." Mayson used the firearms as barter to facilitate the drugs-for-cigarettes transactions. Mayson negotiated over the value of the firearms, drugs, and untaxed cigarettes over calls and texts, and in Mbuenchu's presence at the time of the trade. The addition of firearms thus "sweetened the pot," facilitating the trade. This is more than enough for a rational jury to find that Mayson used or carried a firearm during and in relation to a drug trafficking offense. *See also United States v. Latham*, 578 F. App'x 312, 315 (4th Cir. 2014) ("Selling guns and drugs in the same transaction constitutes 'use' of firearm in the context of § 924(c)."). The Court does not think that if a defendant is using a gun for barter that the gun must be traded *for* drugs (instead of *with* drugs) to meet the statutory requirement. Such a holding would impede "section 924(c)(1)'s unmistakable objective of 'persuad[ing] the man who is tempted to commit a federal Felony to leave his gun at home.'" *United States v. Camps*, 32 F.3d 102 (4th Cir. 1994) (quoting 114 Cong. Rec. 22231 (1968)).

This bartering was reasonably foreseeable to Mbuenchu as he drove Mayson to the transactions and provided him with drugs that he knew would be sold—along with the guns—to the officers. As Mayson's use of the firearm on these two occasions was foreseeable to Mbuenchu and in furtherance of the conspiracy, Mbuenchu was properly convicted of Count Six and Seven under the *Pinkerton* doctrine. Mbuenchu's motion for acquittal on Counts Six and Seven is, therefore, DENIED.

## IV. Conclusion

As outlined above, the Court does not find any of Mbuenchu's arguments persuasive. The Court concludes that there was sufficient evidence presented at trial for a rational trier of

9

fact to convict Mbuenchu on Counts One, Six, and Seven. The Court, therefore, finds good cause to DENY the Motion for Acquittal. An appropriate Order will issue.

July 6, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge